Noe ACOSTA, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–92–369–CR.

Court of Appeals of Texas,
Austin.

Dec. 15, 1993.

Ray Bass, Austin, for appellant.

Ronald Earle, Dist. Atty., Jesse Murga, Asst. Dist. Atty., Austin, for appellee.

Before POWERS, ABOUSSIE and DAVIS *, JJ.

---

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003(b) (West 1988).

DAVIS, Judge (Retired).

Appellant entered a negotiated plea of guilty to the offense of possession of a controlled substance, cocaine, in an amount less than twenty-eight grams. *See* Tex. Health & Safety Code Ann. § 481.115(b) (West 1992). Punishment was assessed by the court at confinement for two years, probated. Appeal is limited to the court's action in overruling appellant's motion to suppress. Tex. R.App.P. 40(b)(1). We will overrule appellant's point of error and affirm the judgment of the trial court.

The facts elicited at the motion to suppress hearing are undisputed. On the evening of October 17, 1991, Officers Tony Bieze and Mike Schnoutz were "working street prostitution" in an area on South Congress Avenue in Austin known as "the stroll." Nine days earlier, Schnoutz had found Kathy Walters, a known prostitute, in a car with a man who had "his pants down to his knees." Walters told Schnoutz that she was "tricking for heroin."

On the night in question, undercover officer Mike Pollard had picked up Walters in an effort to "make a case on her." While Walters agreed to have a sexual act with the officer, the deal was not consummated because of their inability to agree on a price. Officer Bieze testified that when working street prostitution, officers will watch known prostitutes until a "John" picks one of them up in the roadway. Officers then "follow them to whatever location they're going to make their deal as far as the sex act." In accordance with this procedure, Bieze and Schnoutz followed Pollard and Walters until Pollard let her out of the car at the Austin Motel. Bieze and Schnoutz then followed Walters as she walked "back up to about the 1700 block" of South Congress where she got in a car with appellant.

Bieze and Schnoutz were able to follow appellant and Walters despite the fact "it was obvious they were trying to lose somebody." Appellant drove to Stacey Park where he stopped his vehicle. The officers stopped and positioned their unmarked police vehicle "nose to nose" with appellant's car. After identifying themselves as police officers, they hollered to appellant and Walters to "Put your hands up where we can see them." Bieze stated that such action was taken because "that was for our protection, I didn't know Acosta [appellant]." Schnoutz approached appellant's side of the car with his pistol pointed toward appellant. After noticing that appellant had his hands in his lap following their first directive to raise hands, Schnoutz grabbed appellant and pulled him out of the vehicle. Appellant "reached in his left front pocket, pulled out a vial and dropped it to the ground." Appellant volunteered that he was sorry, that the vial contained cocaine, and that it was not his.

Appellant asserts that the evidence of the cocaine was not admissible because it was obtained by illegal detention and arrest. A succinct statement of the law relative to the temporary detention of a suspicious person is set forth in *Hoag v. State*, 728 S.W.2d 375 (Tex.Crim.App.1987):

> Consistent with the Fourth Amendment, a police officer may briefly stop a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. In order to justify a temporary detention, the officer must have specific articulable facts which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen stopped for further investigation. [T]he inarticulate hunch, suspicion, or good faith of the investigating officer is never sufficient to justify a police officer to order a subject to stop his motor vehicle or to order a subject from his automobile. There must be a reasonable suspicion by the officer that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime.

*Id.* at 380 (citations omitted). There are limitations on the intrusion of the freedom of a person during an investigative stop. The detention must be temporary and last no longer than is necessary to effectuate the

purpose of the stop. *Collier v. State,* 843 S.W.2d 176, 177 (Tex.App.—Houston [14th Dist.] 1992, no pet.). The police "may not carry out a full search of the person or his effects. Nor may they verify their suspicions by means that approach an arrest." *Curry v. State,* 699 S.W.2d 331, 333 (Tex.App.— Houston [14th Dist.] 1985, pet. ref'd). In *Collier,* the officers found nothing to confirm their suspicion of a drug deal or any other criminal activity after they stopped and searched the car. The officers continued to detain the defendant after failing to develop probable cause for a period of twenty minutes, during which time defendant dropped a substance found to be cocaine. The court held that the continued detention of defendant was without probable cause and that the defendant's abandonment of the cocaine was the result of the illegal detention, and that the cocaine was inadmissible. In *Curry,* the court found that the initial detention of the defendant in the airport was justified since the defendant fit certain characteristics of the drug courier profile. The defendant was questioned, grabbed by the arm when she started to leave, and carried to another room where she was strip-searched. The court concluded that the search and detention were without probable cause and the evidence found during the search should have been suppressed.

■ A person commits the offense of prostitution if he knowingly: (1) offers to engage, agrees to engage, or engages in sexual conduct for a fee, or (2) solicits another in a public place to engage with him in sexual conduct for hire. Tex.Penal Code Ann. § 43.02 (West 1989). Because of their observations, experience and knowledge about Walter's background, the officers in the instant cause clearly had a basis for a reasonable suspicion that the offense of prostitution was occurring or had occurred. We find that the officer's action in drawing his gun and pulling appellant out of the car to be consistent with an investigative stop under the conditions confronting the officers. The officers knew that Walters "tricked" for heroin and that appellant's vehicle was parked in a park during nighttime hours. The officers did not know appellant, and appellant did not raise his hands in response to the officers'

first request. Under these circumstances, the officers had a reasonable basis for taking the precautions they exercised for their protection. Unlike the defendants in *Collier* and *Curry,* appellant dropped a vial that he stated contained cocaine before he was ever questioned or searched.

■ Moreover, a "peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of peace, or threaten, or are about to commit some offense against the law." Tex.Code Crim.Proc. Ann. § 14.03 (West Supp.1993). "Rarely is any place suspicious per se. Additional facts and reasonable inferences therefrom, however, may justifiably render a place suspicious from a police officer's perspective." *Muniz v. State,* 851 S.W.2d 238, 251 (Tex.Crim.App. 1993). While the park where appellant and Walters parked on the night in question was not a suspicious place per se, appellant's elusive driving after picking up Walters, coupled with additional facts and inferences possessed by the officers, made the site a place where officers could reasonably infer that prostitution and narcotic violations would occur. We conclude that appellant and Walters were in a suspicious place under circumstances which showed that appellant had or was about to commit some offense against the law. Hence, there was probable cause for appellant's arrest.

The judgment is affirmed.