Bruce Alan VACTOR, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–05–00094–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 24, 2005.

Decided Nov. 10, 2005.

Jason D. Cassel, The Cassel Law Firm, PC, Longview, for appellant.

Ray Bowman, Asst. Dist. Atty., Longview, for state.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

After the trial court denied his motion to suppress evidence, Bruce Alan Vactor pled guilty to the offense of possession of a controlled substance (cocaine) in an amount greater than one gram but less than four grams, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D) (Vernon Supp.2005) (cocaine is group 1 drug); § 481.115(c) (Vernon 2003) (offense of possessing penalty group 1 drug). There was no negotiated plea agreement, and Vactor's punishment range was enhanced by virtue of his plea of "true" to having been previously and finally convicted of one other felony offense. *See* TEX. PEN.CODE ANN. § 12.42(c)(1) (Vernon Supp.2005) (enhanced range fifteen to ninety-nine years or life). The trial court sentenced Vactor to fifteen years' imprisonment. Vactor now appeals, contending the trial court erred by denying his motion to suppress in contravention of his state and federal constitutional rights. We affirm.

Vactor argues on appeal that the police lacked reasonable suspicion to stop him. Alternatively, Vactor contends that, if the initial detention was proper, the subsequent *invasive* search was unlawful. In both arguments, Vactor claims the police searched him in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and in violation of Article I, Section 9 of the Texas Constitution. Vactor does not, however, provide argument or authority that the Texas Constitution is more comprehensive than the federal counterpart. Accordingly, we limit our analysis to the federal protections. *Cf. Carmouche v. State,* 10 S.W.3d 323, 326 n. 1 (Tex.Crim. App.2000).

## A. Standard of Review

A trial court's ruling on a motion to suppress evidence is reviewed for abuse of discretion. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *Carter v. State,* 150 S.W.3d 230, 235 (Tex. App.-Texarkana 2004, no pet.). If the trial court's ruling is correct under any theory of law applicable to the case, we must affirm. *Romero v. State,* 800 S.W.2d 539, 543–44 (Tex.Crim.App.1990); *Shaw v. State,* 122 S.W.3d 358, 363 (Tex.App.-Texarkana 2003, no pet.). "The general rule is that an appellate court should afford almost total deference to a trial court's determination of the historical facts supported by the record, especially when the trial court's fact-findings are based on an evaluation of credibility and demeanor." *Carter,* 150 S.W.3d at 235 (citing *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App. 2000)). "At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses." *Carter,* 150 S.W.3d at 235 (citing *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997)). We should afford great deference to a trial court's ruling on "application of law to fact questions," also known as

"mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Carter,* 150 S.W.3d at 235. However, we review de novo those issues and questions that do not turn on credibility or demeanor. *Id.* "Where, as here, a trial court makes no explicit findings of historical fact, the appellate court should view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact." *Id.* (citing *Carmouche,* 10 S.W.3d at 328).

## B. The Initial Investigative Detention

The United States Supreme Court has held "police can stop and briefly detain a person for investigative purposes if [the officer has] a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if [the officer] lack[s] probable cause...." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or 'hunch.'" *Sokolow,* 490 U.S. at 7, 109 S.Ct. 1581 (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. 1868). But this level of reasonable suspicion "is considerably less than proof of wrongdoing by a preponderance of the evidence," and it requires less than the probable standard, which calls for facts suggesting "a fair probability that contraband or evidence of a crime will be found." *Sokolow,* 490 U.S. at 7, 109 S.Ct. 1581 (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); and referencing *United States v. Montoya de Hernandez,* 473 U.S. 531, 541, 544, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985)). And the Court further instructs us to consider the totality of the circumstances in considering whether

the initial detention was reasonable. *Sokolow*, 490 U.S. at 8, 109 S.Ct. 1581; *see also United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). In fact, several individual considerations that by themselves each appear innocent can, seen as part of a greater totality, "justify the suspicion that criminal activity was afoot." *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980).

At the hearing on the motion to suppress, Officer Larry Webb of the Longview Police Department testified he was working the late afternoon and early evening patrol of May 24, 2003. Webb arrived at the intersection of Oden and Davis Streets in Longview, and he started to turn into a nearby alley. As Webb approached the alley, an area Webb testified was a high narcotics trafficking area, Webb saw Gwen King (a person Webb knew to be both a drug user and a prostitute) and Vactor. Webb observed Vactor had cupped his hands out in front toward King, and it appeared Vactor was showing something in his hands to her. Vactor then saw Webb, turned his back to Webb, and then appeared to take what had previously been in his cupped hands and stuff it into his pants. When Vactor turned around to where Webb could see his face, Webb noticed something different about the front of Vactor's pants: Vactor now had what appeared to be an abnormally large bulge in his crotch. Webb then exited his patrol vehicle and made contact with Vactor.[1] Vactor denied having stuffed anything in his pants. On the videotape, it is clear that Webb then repeatedly advised Vactor that Webb needed to check Vactor's person for weapons and appeared to

attempt to do a *Terry*[2] pat-down. Vactor reacted negatively, was uncooperative, and his actions frustrated Webb's attempts at a pat-down search. When Webb subsequently tried to place Vactor in handcuffs for the purpose of performing a *Terry* pat-down for weapons, Vactor resisted by forcefully struggling and pushing away the officer.

Vactor argues this case is "almost identical" to the facts in *Cook v. State*, 1 S.W.3d 718 (Tex.App.-El Paso 1999, pet. ref'd), where the El Paso court found the officer did not have a reasonable suspicion that criminal activity was taking place to justify a temporary detention of the defendant. *Id.* at 722. We acknowledge some of the facts in *Cook* are similar (for instance, both defendants were talking with a female in an area where drugs were commonly sold), but we do see some significant factual distinctions. In *Cook*, the officer observed Cook standing with a female with his hand out. On top of his hand was a white Kleenex or baggie. Cook was flipping through something with his thumb. The officer testified this was a typical way to sell drugs in that area. *Id.* at 719. However, it appeared the officer in *Cook* did not stop to investigate this incident until he was later flagged down by a merchant who was complaining about drug sales in front of his place of business. In the case now before this Court, Webb observed Vactor talking to a known drug user with his hands cupped. When Vactor saw Webb, Vactor stuffed something in his pants, creating a bulge that was readily observable by Webb. Webb immediately made contact with Vactor. We believe the facts that Vactor was talking with a person

1. By this time, other officers with the Longview Police Department had arrived as backup. Webb also turned on his patrol unit's video camera, which made a recording of the subsequent events. This recording was admitted into evidence, and it is part of the record before us.

2. *See generally Terry*, 392 U.S. 1, 88 S.Ct. 1868.

known by the police to be a drug user (rather than simply a male talking to a female) and that Vactor was observed placing a noticeable object in his pants are important distinctions from the facts in *Cook.* Further, in this case, Webb stopped to investigate immediately, whereas in *Cook* the officer stopped after a request from a business owner in the area. That owner then told the officer that Cook was not the individual he had earlier seen selling drugs. *Id.* at 720.

While each of the facts in Vactor's case may or may not individually suggest criminal activity, considered in concert they support the trial court's conclusion that Webb's initial detention of Vactor was justified by a reasonable suspicion Vactor was engaged, or would soon be engaging in, criminal activity. Being in a known drug location, furtively showing something to a known drug user, and then both hiding the item (or items) and lying to the police officer about having tried to conceal evidence all support the trial court's conclusion. *Cf. Acosta v. State,* 868 S.W.2d 19, 21 (Tex.App.-Austin 1993, no pet.) (officer's traffic stop of appellant justified by facts, including giving ride to known prostitute and subsequently driving elusively). Thus, we agree that the officer's initial detention of Vactor was supported by reasonable suspicion. We now turn to the issue of whether Webb's subsequent search of Vactor was lawful.

**C. Search Incident to Arrest**

 A warrantless search of a person is presumed unreasonable unless one of the exceptions to the warrant requirement applies. *Brimage v. State,* 918 S.W.2d 466, 500 (Tex.Crim.App.1996) (plurality op.) (op. on reh'g); *Kelly v. State,* 669 S.W.2d 720, 725 (Tex.Crim.App.1984); *Hitchcock v. State,* 118 S.W.3d 844, 848 (Tex.App.-Texarkana 2003, pet. ref'd).

The State argued at trial, and now again on appeal, that Webb's warrantless search of Vactor was permissible as a search incident to Vactor's arrest. A search made incident to arrest is excepted from the Fourth Amendment's warrant requirement. *See, e.g., United States v. Robinson,* 414 U.S. 218, 236, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

 When reasonably necessary *given the circumstances of the investigative detention,* an officer may place a suspect in handcuffs for purposes of protecting and ensuring the officer's safety before performing a *Terry* pat-down search of the suspect. *See Rhodes v. State,* 945 S.W.2d 115, 117 (Tex.Crim.App.1997); *Spight v. State,* 76 S.W.3d 761 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Since Vactor had repelled several attempts by Webb to do a pat-down search, Webb attempted to place Vactor in handcuffs before he performed a *Terry* search. The videotape also shows Webb ordered Vactor no fewer than twenty times to place his hands behind his back to facilitate the handcuffing process, but Vactor refused to comply. Given the specific facts available to Webb at the time, we cannot say it was unreasonable under the circumstances of this case—high narcotics trafficking area, presence of known drug user and prostitute, lying about furtive movements, failing to comply with repeated requests to permit a pat-down— that the use of handcuffs was improper. The use of handcuffs appeared to be necessary to thwart Vactor's attempts to frustrate the *Terry* search. *Cf. Rhodes,* 945 S.W.2d at 117 (quoting 3 Lafave, Search and Seizure, § 9.2(d), 364 (1987). *See also,* 4 LaFave, Search and Seizure, § 9.2(d), 36–38 (1996)). When Webb grabbed Vactor's right hand and started to move it behind Vactor's back, Vactor forcefully struggled and pushed Webb away. Webb and another officer had to wrestle Vactor

to the ground to gain control of the situation.

▮ Vactor does not challenge the reasonableness of the decision to place him in handcuffs during the planned *Terry* search. Nevertheless, once Vactor forcefully resisted Webb's attempt to place him in handcuffs for the purpose of safely performing a *Terry* search, Vactor committed the new criminal offense of resisting a search. *See* TEX. PEN.CODE ANN. § 38.03 (Vernon 2003); *see also Santos v. State*, No. 14-03-01150-CR, 2005 WL 1552638, at *1, 2005 Tex.App. LEXIS 5167, at *3-4 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (mem.op.) (not designated for publication). This new offense was unquestionably committed in Webb's presence. Therefore, Webb had probable cause to arrest Vactor for the new criminal offense. *See* TEX.CODE CRIM. PROC. ANN. art. 14.01 (Vernon 2005) (peace officer may arrest without a warrant for any offense committed in his or her presence).[3] The invasive search that is the subject of this appeal occurred subsequent to Vactor committing the new criminal offense. Because the trial court could have reasonably concluded Webb had probable cause to arrest Vactor for the new criminal offense, it follows that the trial court could have determined Webb's subsequent search of Vactor was permissible as a search incident to arrest. Accordingly, we overrule Vactor's point of error.

### D. Conclusion

For the foregoing reasons, we affirm the trial court's judgment.

---

**3.** Both *Cook*, 1 S.W.3d at 720, and *Jackson v. State*, 993 S.W.2d 162, 164 (Tex.App.-Eastland 1999, no pet.), have treated the resistance to a search incident to an investigative detention as a violation of TEX. PEN.CODE ANN. § 38.03 as well as resisting a "traditional" search.