In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00094-CR
______________________________


BRUCE ALAN VACTOR, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 32101-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            After the trial court denied his motion to suppress evidence, Bruce Alan Vactor pled guilty
to the offense of possession of a controlled substance (cocaine) in an amount greater than one gram
but less than four grams, a third-degree felony. See Tex. Health & Safety Code Ann.
§ 481.102(3)(D) (Vernon Supp. 2005) (cocaine is group 1 drug); § 481.115(c) (Vernon 2003)
(offense of possessing penalty group 1 drug). There was no negotiated plea agreement, and Vactor's
punishment range was enhanced by virtue of his plea of "true" to having been previously and finally
convicted of one other felony offense. See Tex. Pen. Code Ann. § 12.42(c)(1) (Vernon Supp. 2005)
(enhanced range fifteen to ninety-nine years or life). The trial court sentenced Vactor to fifteen years'
imprisonment. Vactor now appeals, contending the trial court erred by denying his motion to
suppress in contravention of his state and federal constitutional rights. We affirm.
            Vactor argues on appeal that the police lacked reasonable suspicion to stop him. 
Alternatively, Vactor contends that, if the initial detention was proper, the subsequent invasive search
was unlawful. In both arguments, Vactor claims the police searched him in violation of his rights
under the Fourth and Fourteenth Amendments to the United States Constitution, and in violation of
Article I, Section 9 of the Texas Constitution. Vactor does not, however, provide argument or
authority that the Texas Constitution is more comprehensive than the federal counterpart. 
Accordingly, we limit our analysis to the federal protections. Cf. Carmouche v. State, 10 S.W.3d
323, 326 n.1 (Tex. Crim. App. 2000).
A. Standard of Review
            A trial court's ruling on a motion to suppress evidence is reviewed for abuse of discretion. 
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Carter v. State, 150 S.W.3d 230,
235 (Tex. App.—Texarkana 2004, no pet.). If the trial court's ruling is correct under any theory of
law applicable to the case, we must affirm. Romero v. State, 800 S.W.2d 539, 543–44 (Tex. Crim.
App. 1990); Shaw v. State, 122 S.W.3d 358, 363 (Tex. App.—Texarkana 2003, no pet.). "The
general rule is that an appellate court should afford almost total deference to a trial court's
determination of the historical facts supported by the record, especially when the trial court's
fact-findings are based on an evaluation of credibility and demeanor." Carter, 150 S.W.3d at 235
(citing State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)). "At a suppression hearing, the
trial court is the exclusive trier of fact and judge of the credibility of the witnesses." Carter, 150
S.W.3d at 235 (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We should
afford great deference to a trial court's ruling on "application of law to fact questions," also known
as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of
credibility and demeanor. Carter, 150 S.W.3d at 235. However, we review de novo those issues
and questions that do not turn on credibility or demeanor. Id. "Where, as here, a trial court makes
no explicit findings of historical fact, the appellate court should view the evidence in the light most
favorable to the trial court's ruling and assume the trial court made implicit findings of fact." Id.
(citing Carmouche, 10 S.W.3d at 328).
B. The Initial Investigative Detention 
            The United States Supreme Court has held "police can stop and briefly detain a person for
investigative purposes if [the officer has] a reasonable suspicion supported by articulable facts that
criminal activity 'may be afoot,' even if [the officer] lack[s] probable cause . . . ." United States v.
Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). "The officer, of
course, must be able to articulate something more than an inchoate and unparticularized suspicion
or 'hunch.'" Sokolow, 490 U.S. at 7 (quoting Terry, 392 U.S. at 27). But this level of reasonable
suspicion "is considerably less than proof of wrongdoing by a preponderance of the evidence," and
it requires less than the probable standard, which calls for facts suggesting "a fair probability that
contraband or evidence of a crime will be found." Sokolow, 490 U.S. at 7 (quoting Illinois v. Gates,
462 U.S. 213, 238 (1983); and referencing United States v. Montoya de Hernandez, 473 U.S. 531,
541, 544 (1985)). And the Court further instructs us to consider the totality of the circumstances in
considering whether the initial detention was reasonable. Sokolow, 490 U.S. at 8; see also United
States v. Cortez, 449 U.S. 411, 417 (1981). In fact, several individual considerations that by
themselves each appear innocent can, seen as part of a greater totality, "justify the suspicion that
criminal activity was afoot." Reid v. Georgia, 448 U.S. 438, 441 (1980). 
            At the hearing on the motion to suppress, Officer Larry Webb of the Longview Police
Department testified he was working the late afternoon and early evening patrol of May 24, 2003. 
Webb arrived at the intersection of Oden and Davis Streets in Longview, and he started to turn into
a nearby alley. As Webb approached the alley, an area Webb testified was a high narcotics
trafficking area, Webb saw Gwen King (a person Webb knew to be both a drug user and a prostitute)
and Vactor. Webb observed Vactor had cupped his hands out in front toward King, and it appeared
Vactor was showing something in his hands to her. Vactor then saw Webb, turned his back to Webb,
and then appeared to take what had previously been in his cupped hands and stuff it into his pants. 
When Vactor turned around to where Webb could see his face, Webb noticed something different
about the front of Vactor's pants: Vactor now had what appeared to be an abnormally large bulge
in his crotch. Webb then exited his patrol vehicle and made contact with Vactor.


 Vactor denied
having stuffed anything in his pants. On the videotape, it is clear that Webb then repeatedly advised
Vactor that Webb needed to check Vactor's person for weapons and appeared to attempt to do a
Terry


 pat-down. Vactor reacted negatively, was uncooperative, and his actions frustrated Webb's
attempts at a pat-down search. When Webb subsequently tried to place Vactor in handcuffs for the
purpose of performing a Terry pat-down for weapons, Vactor resisted by forcefully struggling and
pushing away the officer. 
            Vactor argues this case is "almost identical" to the facts in Cook v. State, 1 S.W.3d 718 (Tex.
App.—El Paso 1999, pet. ref'd), where the El Paso court found the officer did not have a reasonable
suspicion that criminal activity was taking place to justify a temporary detention of the defendant. 
Id. at 722. We acknowledge some of the facts in Cook are similar (for instance, both defendants
were talking with a female in an area where drugs were commonly sold), but we do see some
significant factual distinctions. In Cook, the officer observed Cook standing with a female with his
hand out. On top of his hand was a white Kleenex or baggie. Cook was flipping through something
with his thumb. The officer testified this was a typical way to sell drugs in that area. Id. at 719. 
However, it appeared the officer in Cook did not stop to investigate this incident until he was later
flagged down by a merchant who was complaining about drug sales in front of his place of business. 
In the case now before this Court, Webb observed Vactor talking to a known drug user with his
hands cupped. When Vactor saw Webb, Vactor stuffed something in his pants, creating a bulge that
was readily observable by Webb. Webb immediately made contact with Vactor. We believe the
facts that Vactor was talking with a person known by the police to be a drug user (rather than simply
a male talking to a female) and that Vactor was observed placing a noticeable object in his pants are
important distinctions from the facts in Cook. Further, in this case, Webb stopped to investigate
immediately, whereas in Cook the officer stopped after a request from a business owner in the area. 
That owner then told the officer that Cook was not the individual he had earlier seen selling drugs. 
Id. at 720. 
            While each of the facts in Vactor's case may or may not individually suggest criminal
activity, considered in concert they support the trial court's conclusion that Webb's initial detention
of Vactor was justified by a reasonable suspicion Vactor was engaged, or would soon be engaging
in, criminal activity. Being in a known drug location, furtively showing something to a known drug
user, and then both hiding the item (or items) and lying to the police officer about having tried to
conceal evidence all support the trial court's conclusion. Cf. Acosta v. State, 868 S.W.2d 19, 21
(Tex. App.—Austin 1993, no pet.) (officer's traffic stop of appellant justified by facts, including
giving ride to known prostitute and subsequently driving elusively). Thus, we agree that the officer's
initial detention of Vactor was supported by reasonable suspicion. We now turn to the issue of
whether Webb's subsequent search of Vactor was lawful.
C. Search Incident to Arrest
            A warrantless search of a person is presumed unreasonable unless one of the exceptions to
the warrant requirement applies. Brimage v. State, 918 S.W.2d 466, 500 (Tex. Crim. App. 1996)
(plurality op.) (op. on reh'g); Kelly v. State, 669 S.W.2d 720, 725 (Tex. Crim. App. 1984); Hitchcock
v. State, 118 S.W.3d 844, 848 (Tex. App.—Texarkana 2003, pet. ref'd). The State argued at trial,
and now again on appeal, that Webb's warrantless search of Vactor was permissible as a search
incident to Vactor's arrest. A search made incident to arrest is excepted from the Fourth
Amendment's warrant requirement. See, e.g., United States v. Robinson, 414 U.S. 218, 236 (1973).
            When reasonably necessary given the circumstances of the investigative detention, an officer
may place a suspect in handcuffs for purposes of protecting and ensuring the officer's safety before
performing a Terry pat-down search of the suspect. See Rhodes v. State, 945 S.W.2d 115, 117 (Tex.
Crim. App. 1997); Spight v. State, 76 S.W.3d 761 (Tex. App.—Houston [1st Dist.] 2002, no pet.). 
Since Vactor had repelled several attempts by Webb to do a pat-down search, Webb attempted to
place Vactor in handcuffs before he performed a Terry search. The videotape also shows Webb
ordered Vactor no fewer than twenty times to place his hands behind his back to facilitate the
handcuffing process, but Vactor refused to comply. Given the specific facts available to Webb at
the time, we cannot say it was unreasonable under the circumstances of this case—high narcotics
trafficking area, presence of known drug user and prostitute, lying about furtive movements, failing
to comply with repeated requests to permit a pat-down—that the use of handcuffs was improper. 
The use of handcuffs appeared to be necessary to thwart Vactor's attempts to frustrate the Terry
search. Cf. Rhodes, 945 S.W.2d at 117 (quoting 3 Lafave, Search and Seizure, § 9.2(d), 364 (1987). 
See also, 4 LaFave, Search and Seizure, § 9.2(d), 36–38 (1996)). When Webb grabbed Vactor's right
hand and started to move it behind Vactor's back, Vactor forcefully struggled and pushed Webb
away. Webb and another officer had to wrestle Vactor to the ground to gain control of the situation. 
            Vactor does not challenge the reasonableness of the decision to place him in handcuffs during
the planned Terry search. Nevertheless, once Vactor forcefully resisted Webb's attempt to place him
in handcuffs for the purpose of safely performing a Terry search, Vactor committed the new criminal
offense of resisting a search. See Tex. Pen. Code Ann. § 38.03 (Vernon 2003); see also Santos v.
State, No. 14-03-01150-CR, 2005 Tex. App. LEXIS 5167, at *3–4 (Tex. App.—Houston [14th Dist.]
2005, no pet.) (mem. op.) (not designated for publication). This new offense was unquestionably
committed in Webb's presence. Therefore, Webb had probable cause to arrest Vactor for the new
criminal offense. See Tex. Code Crim. Proc. Ann. art. 14.01 (Vernon 2005) (peace officer may
arrest without a warrant for any offense committed in his or her presence).


 The invasive search that
is the subject of this appeal occurred subsequent to Vactor committing the new criminal offense. 
Because the trial court could have reasonably concluded Webb had probable cause to arrest Vactor
for the new criminal offense, it follows that the trial court could have determined Webb's subsequent
search of Vactor was permissible as a search incident to arrest. Accordingly, we overrule Vactor's
point of error.
D. Conclusion
            For the foregoing reasons, we affirm the trial court's judgment.

 
                                                                        Jack Carter
                                                                        Justice

Date Submitted:          October 24, 2005
Date Decided:             November 10, 2005

Publish