In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00093-CV


______________________________




JEFFREY SCOTT HATFIELD, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 8th Judicial District Court


Hopkins County, Texas


Trial Court No. CV37934




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Appellant, Jeffrey Scott Hatfield, filed a notice of restricted appeal July 16, 2007, indicating
he attempts to appeal from a dismissal or nonsuit of the trial court. We have now received the clerk's
record, and on our review of that record, we find no such dismissal or order. Further, we have
contacted the district clerk, and she has informed us there is no such dismissal or order in the trial
court's records of this case. Unless otherwise statutorily authorized, an appeal may be made only
from a final judgment. See Tex. Civ. Prac. & Rem. Code Ann. § 51.012 (Vernon 1997), § 51.014
(Vernon Supp. 2006). 

 Should we construe Hatfield's notice of appeal to be a restricted appeal from the order of the
trial court garnishing his inmate trust account, that order was signed January 30, 2006. Hatfield had
until July 30, 2006, to file a restricted notice of appeal; his notice of appeal was not filed until
July 16, 2007. The notice of appeal would, therefore, be untimely filed. See Tex. R. App. P. 26.1(c)
(notice of restricted appeal must be filed within six months after appealable order or judgment is
signed). 

 Accordingly, we dismiss this appeal for want of jurisdiction.



 Bailey C. Moseley

 Justice


Date Submitted: September 13, 2007

Date Decided: September 14, 2007



t
regarding the female passenger. The driver, however, did not cooperate with these efforts at
restraint. Instead, he began to resist. Eventually a fight ensued between the two, ending only after
Griffith knocked Grissom unconscious. 

 Grissom now contends the trial court should have suppressed the State's evidence in this case
because the police obtained that evidence only as a result of an illegal detention in violation of
Grissom's Fourth Amendment freedom from unreasonable searches and seizures. The trial court
admitted the evidence without articulating the basis of its ruling, either orally or in writing. 

 A trial court's ruling on a motion to suppress is a mixed question of law and fact, which we
review under a bifurcated standard. St. George v. State, 237 S.W.3d 720, 725 (Tex. Crim. App.
2007) (citing Ford v. State, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)). We accord almost
complete deference to the trial court's findings of historical fact. Id. (citing Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000)). If the trial court does not make explicit findings of fact,
we must view the evidence adduced in that court "in the light most favorable to the trial court's
rulings and assume that the trial court made implicit findings of fact supported by the record." Id.
(citing Ford, 158 S.W.3d at 493).

 We review the appellate record to determine whether the trial court's ruling is supported by
that record and whether the ruling is supported by any theory of law applicable to the case. Id.
(citing Armendariz v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003)). Where the trial court's
ruling on mixed questions of law and fact does not hinge on an evaluation of witness credibility and
demeanor, we conduct a de novo review of the evidence. Id. (citing Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997)).

 The Fourth Amendment guarantees all citizens freedom from unreasonable searches and
seizures by governmental officials. U.S. Const. amend. IV. Police officers are governmental
officials. See, e.g., Tex. Code Crim. Proc. Ann. art. 2.12 (Vernon Supp. 2008), art. 2.13 (Vernon
2005); Tex. Local Gov't Code Ann. § 143.001(a) (Vernon 2008) (municipal police officers are
"public servants"). When a police officer detains someone by restricting his or her movements
through either a show of force, the use of physical restraint, or by communicated commands, such
conduct by an officer may be properly characterized as a "detention" for Fourth Amendment
purposes because it expresses to that citizen that he or she is no longer free to move about
independent of police direction. United States v. Mendenhall, 446 U.S. 544, 554 (1980); State v.
Garcia-Cantu, 253 S.W.3d 236, 238 (Tex. Crim. App. 2008). By contrast, when an officer merely
approaches someone to engage him or her in conversation--even if such contact is part of a formal
criminal inquiry or investigation--such contact, without more, does not implicate the Fourth
Amendment, but is classified merely as an "encounter" between the police and the citizen. Florida
v. Bostick, 501 U.S. 429, 431, 434 (1991); Terry v. Ohio, 392 U.S. 1, 19 (1968); Garcia-Cantu, 253
S.W.3d at 242. So long as the "encounter" remains consensual, such interaction between police and
citizenry does not trigger the Fourth Amendment's protections. Bostick, 501 U.S. at 434; Garcia-Cantu, 253 S.W.3d at 242.

 Distinguishing an "encounter" from a "detention" is not always easy. As the United States
Supreme Court has noted, "encounters between citizens and police officers are incredibly rich in
diversity." Terry, 392 U.S. at 13; see also Garcia-Cantu, 253 S.W.3d at 242. Sometimes an
encounter can escalate into a detention. See Kaupp v. Texas, 538 U.S. 626, 628-33 (2003). After
an "encounter" becomes a "detention," officers must be respectful of the citizen's Fourth Amendment
rights. Id. at 632 (citing INS v. Delgado, 466 U.S. 210, 215 (1984); and referencing Hayes v.
Florida, 470 U.S. 811, 815-16 (1985)).

 This nation's highest court has provided a test to distinguish situations amounting to a mere
"encounter" from situations that escalate into (or originate as) "detentions" for Fourth Amendment
purposes: "[T]he crucial test is whether, taking into account all of the circumstances surrounding
the encounter, the police conduct would 'have communicated to a reasonable person that he was not
at liberty to ignore the police presence and go about his business.'" Bostick, 501 U.S. at 437 (quoting
Michigan v. Chesternut, 486 U.S. 567, 569 (1988)); see also Kaupp, 538 U.S. at 629; Garcia-Cantu,
253 S.W.3d at 242. With these standards in mind, we turn to the trial court's resolution of Grissom's
suppression motion.

 Grissom urged in the trial court, and on appeal, that everything occurring after the officer first
approached the van and asked for identification constituted a "detention" for Fourth Amendment
purposes and that, because the officer lacked reasonable suspicion at the time of such "detention,"
all evidence seized as a result of the subsequent illegal search and seizure must be suppressed. We
disagree.

 Griffith's initial approach to Grissom's van did not constitute a detention for Fourth
Amendment purposes. Nothing in the record suggests that Griffith had his service weapon drawn
at the time, that Griffith had made any statement to the occupants of the van that they were not free
to leave, or that Griffith had otherwise displayed any show of force or other indicator that suggested
to the van occupants that they were no longer free to leave if they so chose. As the United States
Supreme Court has noted, "the Fourth Amendment permits police officers to approach individuals
at random in airport lobbies and other public places to ask them questions and to request consent to
search their luggage, so long as a reasonable person would understand that he or she could refuse to
cooperate." Bostick, 501 U.S. at 431. Therefore, the officer's initial approach to the van and request
for Grissom's identification constituted, at this juncture, nothing more than a mere "encounter,"
which did not invoke the protections of the Fourth Amendment. We find no significance in the fact
that Griffith had just previously asked the female passenger to return to the van. That request was
not accompanied by any show of force, and the record does not otherwise suggest Griffith had
communicated to the van's occupants that they were no longer free to leave scene. Cf. Bostick, 501
U.S. at 432 & 436 (at no time did officers threaten Bostick with gun; police questioning not coercive
nor did such constitute seizure for Fourth Amendment purposes).

 The situation clearly turned into an investigative detention at some point. A police officer
may stop and briefly detain a person for investigative purposes if the officer has a "reasonable
suspicion supported by articulable facts that criminal activity 'may be afoot,' even if [the officer]
lack[s] probable cause . . . ." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392
U.S. at 30). "The officer, of course, must be able to articulate something more than an inchoate and
unparticularized suspicion or 'hunch.'" Id. (quoting Terry, 392 U.S. at 27). "But this level of
reasonable suspicion 'is considerably less than proof of wrongdoing by a preponderance of the
evidence,' and it requires less than the probable cause standard, which calls for facts suggesting 'a
fair probability that contraband or evidence of a crime will be found.'" Vactor v. State, 181 S.W.3d
461, 464 (Tex. App.--Texarkana 2005, pet. ref'd) (quoting Sokolow, 490 U.S. at 7); see also United
States v. Montoya de Hernandez, 473 U.S. 531, 541 (1985); Illinois v. Gates, 462 U.S. 213, 238
(1983). To determine whether the officer's actions were reasonable, the reviewing court must look
to the totality of the circumstances known to the officer at the time he or she decided to detain the
suspect for further investigation. Sokolow, 490 U.S. at 8; United States v. Cortez, 449 U.S. 411, 417
(1981).

 The uncontradicted testimony shows Grissom gave Griffith a false identification, complete
with alternate misspellings of that phony name and a mismatched date of birth. This made Griffith
suspicious. Griffith then learned the female passenger had outstanding felony warrants. Griffith
became more suspicious. When Griffith saw the driver "fidgeting" in the front seat, as if either
nervous or looking for a weapon, the officer became even more suspicious. 

 Ultimately, based on (1) what appeared to be Grissom's intentional misidentification, (2) the
female passenger's felony warrant status, (3) the driver's apparent nervousness and/or furtive
movements, and (4) the fact that Grissom was working alone and backup had not yet arrived, Griffith
formally decided to detain Grissom to ensure the safety of both the officer and the driver. Given the
specific, articulable facts available to the officer at the time he made this decision, we agree that a
totality of the circumstances known to the officer supported his decision to initiate an investigative
detention. 

 "When reasonably necessary given the circumstances of the investigative detention, an officer
may place a suspect in handcuffs for purposes of protecting and ensuring the officer's safety . . . ." 
Vactor, 181 S.W.3d at 466; see also Rhodes v. State, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997);
Spight v. State, 76 S.W.3d 761 (Tex. App.--Houston [1st Dist.] 2002, no pet.). The circumstances
of this case supported the officer's decisions to place Grissom in handcuffs and to separate him from
the female passenger by placing him in the backseat of the patrol unit.

 Once Griffith said he wanted to restrain Grissom, the encounter formally became "detention"
for purposes of the Fourth Amendment because Grissom had been told he was no longer free to
leave. Yet because the officer's decision to restrain Grissom was supported by reasonable suspicion
that criminal activity was afoot, the Fourth Amendment did not authorize Grissom's efforts to resist. 
See Tex. Penal Code Ann. § 38.03. It follows then that the subsequently obtained evidence was
not excluded by the Fourth Amendment from use in prosecuting Grissom on the underlying charge.







 The appellate record supports the trial court's denial of Grissom's motion to suppress. We
overrule Grissom's sole appellate issue and affirm the trial court's judgment.



 Josh R. Morriss, III

 Chief Justice



Date Submitted: August 18, 2008

Date Decided: August 28, 2008


Publish