Charles Dell GRISSOM, Jr., Appellant

v.

The STATE of Texas, Appellee.

No. 06–08–00066–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 18, 2008.

Decided Aug. 28, 2008.

Troy Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, for appellant.

Sarah Cooper, Assistant District Atty., New Boston, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

When police officer Brian Griffith saw a strange van parked in the Liberty–Eylau Volunteer Fire Department's parking lot, he had three different reactions. Griffith noticed that the van was blocking the firehouse garage's bay doors, thereby preventing a fire truck from exiting, even in an emergency. Griffith also thought it was possible that the motorist was having engine trouble and needed assistance. Griffith also remembered his recent investigation of copper thefts in the immediate area. Griffith decided to investigate.

That investigation eventually escalated into a fight between Griffith and the van's driver, Charles Dell Grissom, Jr. As a result, Grissom was charged with, and convicted of, resisting arrest. *See* TEX. PENAL CODE ANN. § 38.03 (Vernon 2003). On appeal, Grissom asserts the trial court erred in denying Grissom's motion to suppress all evidence seized in connection with this case. We affirm the trial court's judgment because we conclude the trial court properly overruled Grissom's motion to suppress.

As Griffith eyed the van, he saw two people inside: Grissom in the driver's seat and a female passenger. As Griffith approached the van, the passenger emerged from the van and began to approach the officer. Griffith asked the woman to return to the van and then made contact with the driver, asking for the latter's identification. The driver said he had no identification with him, but gave the name "James Fisher" and a specific birth date. When asked to spell his last name, the driver gave Griffith a series of suspicious, alternative spellings, including "F-i-s-h-e" and "F-i-s-h-e-s." Griffith provided to his dispatcher the name and date of birth given by the driver, and learned no driver's license had been issued to a person with those particular identifying characteristics. Griffith also noticed during this time that the driver appeared very nervous, was fidgeting, and was constantly looking at the female passenger in what appeared to be a suspicious manner.

Fearing that the driver was either lying about his identification or was about to seek to do harm to the officer, Griffith decided to restrain the driver temporarily to ensure the safety of both the officer and the driver. Griffith then instructed the driver to exit the van. When the driver stepped out of the van, he tried to push past the officer, as if to flee the scene. About this time, Griffith learned from his dispatcher that there were outstanding felony arrest warrants for the female passenger. Griffith then stated he would be placing the driver in the backseat of Griffith's patrol car until the officer received confirmation of the driver's identity and could get other things sorted out regarding the female passenger. The driver, however, did not cooperate with these efforts at restraint. Instead, he began to resist. Eventually a fight ensued between the two, ending only after Griffith knocked Grissom unconscious.

Grissom now contends the trial court should have suppressed the State's evidence in this case because the police obtained that evidence only as a result of an illegal detention in violation of Grissom's Fourth Amendment freedom from unreasonable searches and seizures. The trial court admitted the evidence without articulating the basis of its ruling, either orally or in writing.

■ A trial court's ruling on a motion to suppress is a mixed question of law and fact, which we review under a bifurcated standard. *St. George v. State*, 237 S.W.3d 720, 725 (Tex.Crim.App.2007) (citing *Ford v. State*, 158 S.W.3d 488, 493 (Tex.Crim. App.2005)). We accord almost complete deference to the trial court's findings of historical fact. *Id.* (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000)). If the trial court does not make explicit findings of fact, we must view the evidence adduced in that court "in the light most favorable to the trial court's rulings and assume that the trial court made implicit findings of fact supported by the record." *Id.* (citing *Ford*, 158 S.W.3d at 493).

■ We review the appellate record to determine whether the trial court's ruling is supported by that record and whether the ruling is supported by any theory of law applicable to the case. *Id.* (citing *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex.Crim.App.2003)). Where the trial court's ruling on mixed questions of law and fact does not hinge on an evaluation of witness credibility and demeanor, we conduct a de novo review of the evidence. *Id.* (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)).

■ The Fourth Amendment guarantees all citizens freedom from unreasonable searches and seizures by governmental officials. U.S. CONST. amend. IV. Police officers are governmental officials. *See, e.g.*, TEX.CODE CRIM. PROC. ANN. art. 2.12 (Vernon Supp.2008), art. 2.13 (Vernon 2005); TEX. LOCAL GOV'T CODE ANN. § 143.001(a) (Vernon 2008) (municipal police officers are "public servants"). When a police officer detains someone by restricting his or her movements through either a show of force, the use of physical restraint, or by communicated commands, such conduct by an officer may be properly characterized as a "detention" for Fourth Amendment purposes because it expresses to that citizen that he or she is no longer free to move about independent of police direction. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *State v. Garcia–Cantu*, 253 S.W.3d 236, 238 (Tex.Crim.App.2008). By contrast, when an officer merely approaches someone to engage him or her in conversation—even if such contact is part of a formal criminal inquiry or investigation—such contact, *without more*, does *not* implicate the Fourth Amendment, but is classified merely as an "encounter" between the police and the citizen. *Florida v. Bostick*, 501 U.S. 429, 431, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Garcia–Cantu*, 253 S.W.3d at 242. So long as the "encounter" remains consensual, such interaction between police and citizenry does not trigger the Fourth Amendment's protections. *Bostick*, 501 U.S. at 434, 111 S.Ct. 2382; *Garcia–Cantu*, 253 S.W.3d at 242.

■ Distinguishing an "encounter" from a "detention" is not always easy. As the United States Supreme Court has noted, "encounters between citizens and police officers are incredibly rich in diversity." *Terry*, 392 U.S. at 13, 88 S.Ct. 1868; *see also Garcia–Cantu*, 253 S.W.3d at 242. Sometimes an encounter can escalate into a detention. *See Kaupp v. Texas*, 538 U.S. 626, 628–33, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003). After an "encounter" becomes a "detention," officers must be respectful of the citizen's Fourth Amendment rights. *Id.* at 632, 123 S.Ct. 1843 (citing *INS v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *and referencing Hayes v. Florida*, 470 U.S. 811, 815–16, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985)).

This nation's highest court has provided a test to distinguish situations amounting to a mere "encounter" from situations that escalate into (or originate as) "detentions" for Fourth Amendment purposes: "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Bostick,* 501 U.S. at 437, 111 S.Ct. 2382 (quoting *Michigan v. Chesternut,* 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)); *see also Kaupp,* 538 U.S. at 629, 123 S.Ct. 1843; *Garcia–Cantu,* 253 S.W.3d at 242. With these standards in mind, we turn to the trial court's resolution of Grissom's suppression motion.

Grissom urged in the trial court, and on appeal, that everything occurring after the officer first approached the van and asked for identification constituted a "detention" for Fourth Amendment purposes and that, because the officer lacked reasonable suspicion at the time of such "detention," all evidence seized as a result of the subsequent illegal search and seizure must be suppressed. We disagree.

■ Griffith's initial approach to Grissom's van did not constitute a detention for Fourth Amendment purposes. Nothing in the record suggests that Griffith had his service weapon drawn at the time, that Griffith had made any statement to the occupants of the van that they were not free to leave, or that Griffith had otherwise displayed any show of force or other indicator that suggested to the van occupants that they were no longer free to leave if they so chose. As the United States Supreme Court has noted, "the Fourth Amendment permits police officers to approach individuals at random in airport lobbies and other public places to ask them questions and to request consent to search their luggage, so long as a reasonable person would understand that he or she could refuse to cooperate." *Bostick,* 501 U.S. at 431, 111 S.Ct. 2382. Therefore, the officer's initial approach to the van and request for Grissom's identification constituted, at this juncture, nothing more than a mere "encounter," which did not invoke the protections of the Fourth Amendment. We find no significance in the fact that Griffith had just previously asked the female passenger to return to the van. That request was not accompanied by any show of force, and the record does not otherwise suggest Griffith had communicated to the van's occupants that they were no longer free to leave scene. *Cf. Bostick,* 501 U.S. at 432 & 436, 111 S.Ct. 2382 (at no time did officers threaten Bostick with gun; police questioning not coercive nor did such constitute seizure for Fourth Amendment purposes).

■ The situation clearly turned into an investigative detention at some point. A police officer may stop and briefly detain a person for investigative purposes if the officer has a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if [the officer] lack[s] probable cause...." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry,* 392 U.S. at 30, 88 S.Ct. 1868). "The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or 'hunch.'" *Id.* (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. 1868). "But this level of reasonable suspicion 'is considerably less than proof of wrongdoing by a preponderance of the evidence,' and it requires less than the probable cause standard, which calls for facts suggesting 'a fair probability that contraband or evidence of a crime will be found.'" *Vactor v. State,* 181 S.W.3d 461, 464 (Tex.App.-Texarkana 2005, pet. ref'd) (quoting *Soko-*

*low,* 490 U.S. at 7, 109 S.Ct. 1581); *see also United States v. Montoya de Hernandez,* 473 U.S. 531, 541, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985); *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). To determine whether the officer's actions were reasonable, the reviewing court must look to the totality of the circumstances known to the officer at the time he or she decided to detain the suspect for further investigation. *Sokolow,* 490 U.S. at 8, 109 S.Ct. 1581; *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

The uncontradicted testimony shows Grissom gave Griffith a false identification, complete with alternate misspellings of that phony name and a mismatched date of birth. This made Griffith suspicious. Griffith then learned the female passenger had outstanding felony warrants. Griffith became more suspicious. When Griffith saw the driver "fidgeting" in the front seat, as if either nervous or looking for a weapon, the officer became even more suspicious.

Ultimately, based on (1) what appeared to be Grissom's *intentional* misidentification, (2) the female passenger's felony warrant status, (3) the driver's apparent nervousness and/or furtive movements, and (4) the fact that Grissom was working alone and backup had not yet arrived, Griffith formally decided to detain Grissom to ensure the safety of both the officer and the driver. Given the specific, articulable facts available to the officer at the time he made this decision, we agree that a totality of the circumstances known to the officer supported his decision to initiate an investigative detention.

"When reasonably necessary *given the circumstances of the investigative detention,* an officer may place a suspect in handcuffs for purposes of protecting and ensuring the officer's safety...." *Vactor,*

181 S.W.3d at 466; *see also Rhodes v. State,* 945 S.W.2d 115, 117 (Tex.Crim.App. 1997); *Spight v. State,* 76 S.W.3d 761 (Tex. App.-Houston [1st Dist.] 2002, no pet.). The circumstances of this case supported the officer's decisions to place Grissom in handcuffs and to separate him from the female passenger by placing him in the backseat of the patrol unit.

Once Griffith said he wanted to restrain Grissom, the encounter formally became "detention" for purposes of the Fourth Amendment because Grissom had been told he was no longer free to leave. Yet because the officer's decision to restrain Grissom was supported by reasonable suspicion that criminal activity was afoot, the Fourth Amendment did not authorize Grissom's efforts to resist. *See* Tex. Penal Code Ann. § 38.03. It follows then that the subsequently obtained evidence was not excluded by the Fourth Amendment from use in prosecuting Grissom on the underlying charge.

The appellate record supports the trial court's denial of Grissom's motion to suppress. We overrule Grissom's sole appellate issue and affirm trial court's judgment.