In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00039-CR


______________________________




JAMES EARL INGRAM, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 32536-A




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 The cocaine James Earl Ingram, Jr., was charged with possessing was found, not on his
person or in the vehicle in which he was riding when stopped by the police, but in the police car into
which Ingram was placed after his arrest. And it was found, not while Ingram was in the police car,
but approximately an hour after he had been removed from it and booked into Kilgore's city jail. To
complicate the matter further, Ingram did not occupy the back seat of that police car alone; also in
that back seat was Trameka Green, the driver of the car in which Ingram had been riding when
stopped by the police.

 From Ingram's nonjury conviction for possession of a controlled substance with intent to
deliver and his sentence of forty years' imprisonment, he appeals, attacking the legal and factual
sufficiency of the evidence to connect him with the cocaine and also asserting error in the admission
into evidence of two extraneous bad acts involving controlled substances. We affirm the judgment
of the trial court because (1) the evidence was legally and factually sufficient to connect Ingram to
the cocaine, (2) evidence of the Smith County drug discovery was not the result of an unlawful
search, and (3) Ingram has shown no error in the admission of evidence of the Gregg County
attempted drug purchase.

(1) The Evidence Was Legally and Factually Sufficient to Connect Ingram to the Cocaine

 In a factual sufficiency review, we view all the evidence in a neutral light and determine
whether the evidence supporting the verdict is so weak that the fact-finder's verdict is clearly wrong
and manifestly unjust or whether the great weight and preponderance of the evidence is contrary to
the verdict. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); see also Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.
App. 1996). It is the fact-finder's role to judge the credibility of the witnesses and the weight to be
given their testimony, and the fact-finder "may resolve or reconcile conflicts in the testimony,
accepting or rejecting such portions thereof as it sees fit." Banks v. State, 510 S.W.2d 592 (Tex.
Crim. App. 1974); see also Scott v. State, 814 S.W.2d 517, 518-19 (Tex. App.--Houston [14th
Dist.] 1991, pet. ref'd). When evidence both supports and conflicts with the verdict, we must assume
that the fact-finder resolved the conflict in favor of the verdict. Turro v. State, 867 S.W.2d 43, 47
(Tex. Crim. App. 1993); see also Marshall v. State, No. AP-75,048, 2006 Tex. Crim. App. LEXIS
2444, at *15 (Tex. Crim. App. Dec. 20, 2006) ("our factual-sufficiency jurisprudence still requires
an appellate court to afford 'due deference' to the jury's determinations"). Again, our role is not to
"find" facts; rather, it is to determine whether the verdict is against the great weight of the evidence
presented at trial so as to be clearly wrong and unjust. Ballard v. State, 161 S.W.3d 269, 277 (Tex.
App.--Texarkana 2005), aff'd, 193 S.W.3d 916 (Tex. Crim. App. 2006) ("trial court, acting as finder
of fact in the face of conflicting evidence, was authorized to believe or disbelieve any portion of the
evidence").

 In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson, 23 S.W.3d at 7. If the evidence
is legally insufficient to support the conviction, we must reverse the conviction and enter a judgment
of acquittal. Jackson v. Virginia, 443 U.S. 307 (1979).

 As both issues turn on the evidence, we address both after reviewing the salient evidence.

 The evidence tending to prove or disprove Ingram's connection to the cocaine was provided
largely by officers of the Kilgore Police Department, David Falco and Brandi Plaza. Ingram was a
passenger in the front seat (1) of a car being driven by Green, when it was stopped by Falco for a
defective brake light. As Falco talked with Green, Ingram was putting his hands "under the seat,
between the seats." At some point, Falco inquired about proof of insurance for the car. Ingram
"opened the glove box extremely quickly and slammed it quick, just kept moving around, fidgeting." 
After learning of an outstanding Gregg County arrest warrant for Ingram for failure to identify, and
based on Ingram's movements, Falco feared for his own safety. As a result, Falco used his police
dog to assure Ingram's compliance with his directions and called for assistance from Plaza. When
Plaza arrived at the scene, she handcuffed Ingram--with his hands behind his back--and removed
him from the vehicle. Falco patted him down for weapons, but because Falco held the police dog
with his left hand, he did not search Ingram's pockets for contraband. Ingram was wearing "very
baggy shorts." Falco found no weapons or narcotics on Ingram's person. Ingram was placed in the
back seat of Plaza's vehicle, directly behind the driver's seat. Green was "patted down" by Plaza,
yielding a small quantity of marihuana from one of Green's pants pockets. Green was placed in the
back seat of Plaza's vehicle, on the passenger side of the car. Green's vehicle was searched, yielding
a "marijuana blunt cigar" which was found in a position to have been between, and in plain view of
both, Green and Ingram. 

 Before going out on the call that evening, Plaza had thoroughly searched the back seat area
of her patrol vehicle: she had taken the back seat out and looked under and around it, assuring
herself that there was no foreign matter there. Approximately an hour after Ingram and Green were
transported to and booked into the Kilgore city jail, Plaza made another arrest. Before placing that
suspect into her vehicle, Plaza searched the police car's back seat and found, under the driver's side
of the back seat, a bag containing the crack cocaine which Ingram was convicted of possessing. 
Plaza found with the cocaine "four small yellow baggies that are commonly used for distributing
narcotics." Plaza recalled that the items she found were small enough to be easily concealed. There
had been no other occupants of the vehicle between Ingram's and Green's occupancy and this
subsequent search by Plaza. The items Plaza recovered were not tested for fingerprints. Plaza had
no way to know whether those items might have moved around in the car. 

 To establish that Ingram unlawfully possessed the cocaine in question, the State must have
proved he exercised care, control, or management over the contraband, knowing it was contraband. 
See Cude v. State, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). This proof must have established that
his connection with the cocaine was more than just fortuitous. See Poindexter v. State, 153 S.W.3d
402, 406 (Tex. Crim. App. 2005). Links to demonstrate that connection could include things such
as whether the cocaine was (1) in plain view, (2) conveniently accessible to the accused, (3) in a
place owned by the accused, (4) in a car driven by the accused, (5) found on the same side of the car
as the accused, and (6) found in an enclosed space; and whether (7) the accused's conduct indicated
a consciousness of guilt. See Hurtado v. State, 881 S.W.2d 738, 743 (Tex. App.--Houston [1st
Dist.] 1994, pet. ref'd). Although there must be a link between the accused and the drugs, that link
need not be strong enough to eliminate all other reasonable explanations except the accused's guilt. 
See Brown v. State, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995).

 From the above evidence provided by Falco and Plaza, the jury could have rationally believed
these facts:


 The cocaine was not in Plaza's vehicle before Ingram was placed there. That comes
from her testimony that her initial search of that area of her car was very thorough.
 Though both Ingram and Green were "patted down" before being placed in the back
seat, the search of Green's person was more thorough than the search of Ingram's
person, suggesting that, of the two, Ingram was more likely to have carried the
cocaine into the vehicle's back seat than was Green. That comes from the facts that
Falco had only one free hand to "pat down" Ingram for weapons, that Ingram was
wearing very baggy shorts, that Plaza apparently had both hands free to "pat down"
Green, and that Plaza found a small amount of marihuana on Green's person as a
result of her search.
 Where Plaza found the cocaine also tended to point to Ingram being its original
possessor, not Green. That comes from the facts that Ingram was placed on the
driver's side of the back seat, that Green was on the passenger's side of the back seat,
and that the cocaine was found on Ingram's side.
 No other person could have placed the cocaine under the back seat between Plaza's
two searches of that area of her car. That comes from Plaza's testimony to that effect.
 Ingram's actions, at least early in the encounter, suggested nervousness and, thus,
possible guilt. That comes from Falco's categorization of his movements in the
initial stages of the encounter, before he was removed from Green's vehicle.


While the cocaine was not in plain view under the back seat of the police car and while that car was
not owned or driven by Ingram, the cocaine was found in a place which was, for a time, conveniently
accessible to Ingram, having been found on the same side of the car as Ingram, in an enclosed space. 
Plus, Ingram's conduct could be an indication of a consciousness of guilt. That is combined with the
additional evidence tending to rule out any persons other than Ingram as being the source of the
cocaine found in Plaza's car.

 The evidence to the contrary could have raised a reasonable doubt in the minds of reasonable
jurors, but here the jury did not indicate it had a reasonable doubt. The cocaine was never found on
Ingram's person or in close proximity to him while he was present. Falco did not find any
contraband on Ingram's person during his pat down, but his effort was limited by both
purpose--Falco sought weapons--and ability--only one hand was free. Green was also placed in
the patrol car, but she had previously been searched by an officer who used two hands, and that
search did in fact yield some marihuana from Green's pants pocket. Time passed between Ingram's
presence in the patrol car and Plaza's discovery of the cocaine, but other evidence tends to exclude
other agents as the source of the cocaine. Neither the cocaine container, nor the small yellow bags
found with it, were tested for fingerprints.

 The evidence, viewed in the light most favorable to the verdict, was such that a rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. Thus, the
evidence is legally sufficient. Viewing the evidence in a neutral light, we believe that the evidence
supporting the verdict is not so weak that the verdict is clearly wrong or manifestly unjust, nor is the
great weight and preponderance of the evidence contrary to the verdict. Thus, the evidence was
factually sufficient. The evidence, taken together, establishes legally and factually sufficient
connections between Ingram and the cocaine so that it properly supports his conviction for
possessing it.

(2)  Evidence of the Smith County Drug Discovery Was Not the Result of an Illegal Search

 At trial, Department of Public Safety Trooper Frank Bonilla was allowed to testify, over
objection, that he had found illegal drugs in Ingram's shoe during a traffic stop in Smith County on
May 23, 2005. Ingram asserts that, because the drugs were found as a result of an illegal search, that
evidence should not have been admitted in his trial on the instant offense. (2)

 When the legality of a warrantless search or seizure is challenged, the State must prove by
a preponderance of the evidence that the search or seizure was legal. See McGee v. State, 105
S.W.3d 609, 613 (Tex. Crim. App. 2003); Moreno v. State, 124 S.W.3d 339, 346 (Tex.
App.--Corpus Christi 2003, no pet.); State v. Giles, 867 S.W.2d 105, 108 (Tex. App.--El Paso
1993, pet. ref'd). A warrantless search of a person is presumed unreasonable unless one of the
exceptions to the warrant requirement applies. Brimage v. State, 918 S.W.2d 466, 500 (Tex. Crim.
App. 1996) (plurality op.) (op. on reh'g); Kelly v. State, 669 S.W.2d 720, 725 (Tex. Crim. App.
1984); Vactor v. State, 181 S.W.3d 461, 466 (Tex. App.--Texarkana 2005, pet. ref'd). When the
trial court does not explicitly find facts in ruling on a motion to suppress, we view the evidence in
the light most favorable to the trial court's ruling. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex.
Crim. App. 2000). We review de novo the trial court's application of the law of search and seizure. 
Id. In our review, we consider the totality of the circumstances. Garcia v. State, 43 S.W.3d 527, 530
(Tex. Crim. App. 2001).

 Bonilla testified that, after he stopped Ingram in Smith County, Ingram was "unable to stay
still, jumping up and down, [and] moving around a lot," causing Bonilla to be suspicious. Ingram
asked permission to lean against Bonilla's vehicle--which was granted--and later asked if he could
sit inside Bonilla's car. Before giving permission for Ingram to get into the car, Bonilla noticed
Ingram's left shoe was "half way off." That made Bonilla suspicious because, in his experience,
weapons or drugs could be hidden in a shoe. So, he asked Ingram to see that shoe. Ingram started
to reach for the left shoe, but then looked at Bonilla and reached, instead, for Ingram's right shoe. 
Bonilla indicated that he wanted to see the left shoe. Ingram grasped it and handed it to Bonilla, but
did not release the shoe. Instead, he tugged back on it, "tussled" with Bonilla, gained complete
possession of the shoe, and then tossed it away. Bonilla drew his weapon and placed Ingram under
arrest before going over and finding cocaine and marihuana in Ingram's discarded left shoe. 

 An officer must have a reasonable suspicion, based on specific and articulable facts, that his
or her safety or the safety of others is in danger before the officer may conduct a limited search for
weapons. Carmouche, 10 S.W.3d at 329 (weapons search "justified [only] where the officer can
point to specific and articulable facts which reasonably lead him to conclude that the suspect might
possess a weapon"). A court looks to whether a reasonably prudent officer in the same
circumstances would be warranted in believing that his safety or the safety of others is in danger. 
Michigan v. Long, 463 U. S. 1032, 1050-51 (1983); McCraw v. State, 117 S.W.3d 47, 55 (Tex.
App.--Fort Worth 2003, pet. ref'd). The subjective beliefs of the officer performing the search are
not determinative. See O'Hara v. State, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000).

 We hold that, viewing the above evidence in the light most favorable to the trial court's
ruling, the trial court could have properly found the search was based on reasonable suspicion that
there might be a weapon in Ingram's left shoe or that Bonilla's actions leading up to the tussle over
the shoe were accomplished with consent, or both. The trial court could have also found that, after
Ingram tossed his shoe away, the shoe had been abandoned, and that Bonilla was not guilty of any
misconduct that caused Ingram to abandon the shoe.

 Abandonment of property occurs if (1) the defendant intended to abandon the property, and
(2) his or her decision to abandon the property was not due to police misconduct. Swearingen v.
State, 101 S.W.3d 89, 101 (Tex. Crim. App. 2003); McDuff v. State, 939 S.W.2d 607, 616 (Tex.
Crim. App. 1997). When officers take possession of property that has been abandoned for a reason
other than police misconduct, no seizure occurs under the Fourth Amendment; and the defendant
lacks standing to contest the reasonableness of officers' search of the abandoned property. 
Swearingen, 101 S.W.3d at 101; McDuff, 939 S.W.2d at 616.

 We overrule this point of error.

(3) Ingram Has Shown No Error in the Admission of Evidence of the Gregg County Attempted
Drug Purchase

 Longview police officer Bill England was allowed to testify, over objection, that previously
in Gregg County Ingram attempted, with $3,700.00 in cash he had on his person, to buy illegal drugs
from a police informant in Gregg County. That objection asserted that the evidence improperly
tended to prove only bad character and therefore was not admissible under Rule 404(b) of the Texas
Rules of Evidence. On appeal, Ingram argues a different point, that is, the evidence should not have
been admitted because the State failed to prove what it had stated in its pretrial notice to Ingram.

 The Rule 404(b) objection, asserting that this evidence improperly tended to prove only bad
character, has not been made in Ingram's brief. Therefore, it is waived. See Tex. R. App. P. 38.1. 
Asserting a different complaint on appeal than the objection made at trial waives the issue on appeal. 
Turner v. State, 87 S.W.3d 111, 117 (Tex. Crim. App. 2002).

 The argument made in Ingram's brief--that the pretrial notice of intent to tender evidence of
this event was either defective or the proof did not establish the offense stated in the notice--must
fail. First, that issue was not made the subject of a trial objection. Thus, that issue was not preserved
for appellate review. See Tex. R. App. P. 33.1(a)(1)(A).

 Even had it been preserved, Ingram's argument is without merit. Triggered by a timely
defense request for notice, Rule 404(b) requires only "reasonable notice" of the evidence of
extraneous bad acts or crimes the State intends to use in its case-in-chief at trial. Tex. R. Evid.
404(b). Since Rule 404(b)'s notice requirement is a rule of evidence admissibility, admitting Rule
404(b) evidence without reasonable advance notice is error. Hernandez v. State, 176 S.W.3d 821,
822-24 (Tex. Crim. App. 2005). But the purpose of the Rule 404(b) notice requirement is to prevent
surprise. Id. at 823. Therefore, the rule requires that the notice be reasonable, not that it be judged
on the standard by which a charging instrument is judged. See Randon v. State, 107 S.W.3d 646,
652 (Tex. App.--Texarkana 2003, no pet.) (notice with generalities may be sufficient).

 We hold that the notice about the Gregg County attempted drug purchase the State gave in
this case was reasonable. Therefore, the evidence was not excludable on the basis that Ingram did
not receive sufficient notice. Thus, there was no error shown here.

 Further, any error, defect, irregularity, or variance that does not affect substantial rights must
be disregarded. Tex. R. App. P. 42.2(b). Thus, as any deficiency in the State's notice of extraneous
offenses did not affect Ingram's substantial rights, any such defect was thus harmless.

 We overrule this point of error.

 We affirm the trial court's judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 31, 2007

Date Decided: March 30, 2007


Do Not Publish


1. Two small children were also in the car's back seat. 
2. On appeal, Ingram does not assert error in the admission of either this evidence, or the
evidence of the Gregg County attempted drug purchase addressed below, on the more conventional
basis that either is improper character evidence in violation of Rule 404(b) of the Texas Rules of
Evidence. See Tex. R. Evid. 404(b). In addressing each point of error, we limit ourselves to
Ingram's arguments. See Tex. R. App. P. 38.1(e).