In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00066-CR


______________________________




CHARLES DELL GRISSOM, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law


 Bowie County, Texas


Trial Court No. 08M0046-CCL




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 When police officer Brian Griffith saw a strange van parked in the Liberty-Eylau Volunteer
Fire Department's parking lot, he had three different reactions. Griffith noticed that the van was
blocking the firehouse garage's bay doors, thereby preventing a fire truck from exiting, even in an
emergency. Griffith also thought it was possible that the motorist was having engine trouble and
needed assistance. Griffith also remembered his recent investigation of copper thefts in the
immediate area. Griffith decided to investigate.

 That investigation eventually escalated into a fight between Griffith and the van's driver,
Charles Dell Grissom, Jr. As a result, Grissom was charged with, and convicted of, resisting arrest. 
See Tex. Penal Code Ann. § 38.03 (Vernon 2003). On appeal, Grissom asserts the trial court erred
in denying Grissom's motion to suppress all evidence seized in connection with this case. We affirm
the trial court's judgment because we conclude the trial court properly overruled Grissom's motion
to suppress.

 As Griffith eyed the van, he saw two people inside: Grissom in the driver's seat and a female
passenger. As Griffith approached the van, the passenger emerged from the van and began to
approach the officer. Griffith asked the woman to return to the van and then made contact with the
driver, asking for the latter's identification. The driver said he had no identification with him, but
gave the name "James Fisher" and a specific birth date. When asked to spell his last name, the driver
gave Griffith a series of suspicious, alternative spellings, including "F-i-s-h-e" and "F-i-s-h-e-s." 
Griffith provided to his dispatcher the name and date of birth given by the driver, and learned no
driver's license had been issued to a person with those particular identifying characteristics. Griffith
also noticed during this time that the driver appeared very nervous, was fidgeting, and was constantly
looking at the female passenger in what appeared to be a suspicious manner.

 Fearing that the driver was either lying about his identification or was about to seek to do
harm to the officer, Griffith decided to restrain the driver temporarily to ensure the safety of both the
officer and the driver. Griffith then instructed the driver to exit the van. When the driver stepped
out of the van, he tried to push past the officer, as if to flee the scene. About this time, Griffith
learned from his dispatcher that there were outstanding felony arrest warrants for the female
passenger. Griffith then stated he would be placing the driver in the backseat of Griffith's patrol car
until the officer received confirmation of the driver's identity and could get other things sorted out
regarding the female passenger. The driver, however, did not cooperate with these efforts at
restraint. Instead, he began to resist. Eventually a fight ensued between the two, ending only after
Griffith knocked Grissom unconscious. 

 Grissom now contends the trial court should have suppressed the State's evidence in this case
because the police obtained that evidence only as a result of an illegal detention in violation of
Grissom's Fourth Amendment freedom from unreasonable searches and seizures. The trial court
admitted the evidence without articulating the basis of its ruling, either orally or in writing. 

 A trial court's ruling on a motion to suppress is a mixed question of law and fact, which we
review under a bifurcated standard. St. George v. State, 237 S.W.3d 720, 725 (Tex. Crim. App.
2007) (citing Ford v. State, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)). We accord almost
complete deference to the trial court's findings of historical fact. Id. (citing Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000)). If the trial court does not make explicit findings of fact,
we must view the evidence adduced in that court "in the light most favorable to the trial court's
rulings and assume that the trial court made implicit findings of fact supported by the record." Id.
(citing Ford, 158 S.W.3d at 493).

 We review the appellate record to determine whether the trial court's ruling is supported by
that record and whether the ruling is supported by any theory of law applicable to the case. Id.
(citing Armendariz v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003)). Where the trial court's
ruling on mixed questions of law and fact does not hinge on an evaluation of witness credibility and
demeanor, we conduct a de novo review of the evidence. Id. (citing Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997)).

 The Fourth Amendment guarantees all citizens freedom from unreasonable searches and
seizures by governmental officials. U.S. Const. amend. IV. Police officers are governmental
officials. See, e.g., Tex. Code Crim. Proc. Ann. art. 2.12 (Vernon Supp. 2008), art. 2.13 (Vernon
2005); Tex. Local Gov't Code Ann. § 143.001(a) (Vernon 2008) (municipal police officers are
"public servants"). When a police officer detains someone by restricting his or her movements
through either a show of force, the use of physical restraint, or by communicated commands, such
conduct by an officer may be properly characterized as a "detention" for Fourth Amendment
purposes because it expresses to that citizen that he or she is no longer free to move about
independent of police direction. United States v. Mendenhall, 446 U.S. 544, 554 (1980); State v.
Garcia-Cantu, 253 S.W.3d 236, 238 (Tex. Crim. App. 2008). By contrast, when an officer merely
approaches someone to engage him or her in conversation--even if such contact is part of a formal
criminal inquiry or investigation--such contact, without more, does not implicate the Fourth
Amendment, but is classified merely as an "encounter" between the police and the citizen. Florida
v. Bostick, 501 U.S. 429, 431, 434 (1991); Terry v. Ohio, 392 U.S. 1, 19 (1968); Garcia-Cantu, 253
S.W.3d at 242. So long as the "encounter" remains consensual, such interaction between police and
citizenry does not trigger the Fourth Amendment's protections. Bostick, 501 U.S. at 434; Garcia-Cantu, 253 S.W.3d at 242.

 Distinguishing an "encounter" from a "detention" is not always easy. As the United States
Supreme Court has noted, "encounters between citizens and police officers are incredibly rich in
diversity." Terry, 392 U.S. at 13; see also Garcia-Cantu, 253 S.W.3d at 242. Sometimes an
encounter can escalate into a detention. See Kaupp v. Texas, 538 U.S. 626, 628-33 (2003). After
an "encounter" becomes a "detention," officers must be respectful of the citizen's Fourth Amendment
rights. Id. at 632 (citing INS v. Delgado, 466 U.S. 210, 215 (1984); and referencing Hayes v.
Florida, 470 U.S. 811, 815-16 (1985)).

 This nation's highest court has provided a test to distinguish situations amounting to a mere
"encounter" from situations that escalate into (or originate as) "detentions" for Fourth Amendment
purposes: "[T]he crucial test is whether, taking into account all of the circumstances surrounding
the encounter, the police conduct would 'have communicated to a reasonable person that he was not
at liberty to ignore the police presence and go about his business.'" Bostick, 501 U.S. at 437 (quoting
Michigan v. Chesternut, 486 U.S. 567, 569 (1988)); see also Kaupp, 538 U.S. at 629; Garcia-Cantu,
253 S.W.3d at 242. With these standards in mind, we turn to the trial court's resolution of Grissom's
suppression motion.

 Grissom urged in the trial court, and on appeal, that everything occurring after the officer first
approached the van and asked for identification constituted a "detention" for Fourth Amendment
purposes and that, because the officer lacked reasonable suspicion at the time of such "detention,"
all evidence seized as a result of the subsequent illegal search and seizure must be suppressed. We
disagree.

 Griffith's initial approach to Grissom's van did not constitute a detention for Fourth
Amendment purposes. Nothing in the record suggests that Griffith had his service weapon drawn
at the time, that Griffith had made any statement to the occupants of the van that they were not free
to leave, or that Griffith had otherwise displayed any show of force or other indicator that suggested
to the van occupants that they were no longer free to leave if they so chose. As the United States
Supreme Court has noted, "the Fourth Amendment permits police officers to approach individuals
at random in airport lobbies and other public places to ask them questions and to request consent to
search their luggage, so long as a reasonable person would understand that he or she could refuse to
cooperate." Bostick, 501 U.S. at 431. Therefore, the officer's initial approach to the van and request
for Grissom's identification constituted, at this juncture, nothing more than a mere "encounter,"
which did not invoke the protections of the Fourth Amendment. We find no significance in the fact
that Griffith had just previously asked the female passenger to return to the van. That request was
not accompanied by any show of force, and the record does not otherwise suggest Griffith had
communicated to the van's occupants that they were no longer free to leave scene. Cf. Bostick, 501
U.S. at 432 & 436 (at no time did officers threaten Bostick with gun; police questioning not coercive
nor did such constitute seizure for Fourth Amendment purposes).

 The situation clearly turned into an investigative detention at some point. A police officer
may stop and briefly detain a person for investigative purposes if the officer has a "reasonable
suspicion supported by articulable facts that criminal activity 'may be afoot,' even if [the officer]
lack[s] probable cause . . . ." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392
U.S. at 30). "The officer, of course, must be able to articulate something more than an inchoate and
unparticularized suspicion or 'hunch.'" Id. (quoting Terry, 392 U.S. at 27). "But this level of
reasonable suspicion 'is considerably less than proof of wrongdoing by a preponderance of the
evidence,' and it requires less than the probable cause standard, which calls for facts suggesting 'a
fair probability that contraband or evidence of a crime will be found.'" Vactor v. State, 181 S.W.3d
461, 464 (Tex. App.--Texarkana 2005, pet. ref'd) (quoting Sokolow, 490 U.S. at 7); see also United
States v. Montoya de Hernandez, 473 U.S. 531, 541 (1985); Illinois v. Gates, 462 U.S. 213, 238
(1983). To determine whether the officer's actions were reasonable, the reviewing court must look
to the totality of the circumstances known to the officer at the time he or she decided to detain the
suspect for further investigation. Sokolow, 490 U.S. at 8; United States v. Cortez, 449 U.S. 411, 417
(1981).

 The uncontradicted testimony shows Grissom gave Griffith a false identification, complete
with alternate misspellings of that phony name and a mismatched date of birth. This made Griffith
suspicious. Griffith then learned the female passenger had outstanding felony warrants. Griffith
became more suspicious. When Griffith saw the driver "fidgeting" in the front seat, as if either
nervous or looking for a weapon, the officer became even more suspicious. 

 Ultimately, based on (1) what appeared to be Grissom's intentional misidentification, (2) the
female passenger's felony warrant status, (3) the driver's apparent nervousness and/or furtive
movements, and (4) the fact that Grissom was working alone and backup had not yet arrived, Griffith
formally decided to detain Grissom to ensure the safety of both the officer and the driver. Given the
specific, articulable facts available to the officer at the time he made this decision, we agree that a
totality of the circumstances known to the officer supported his decision to initiate an investigative
detention. 

 "When reasonably necessary given the circumstances of the investigative detention, an officer
may place a suspect in handcuffs for purposes of protecting and ensuring the officer's safety . . . ." 
Vactor, 181 S.W.3d at 466; see also Rhodes v. State, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997);
Spight v. State, 76 S.W.3d 761 (Tex. App.--Houston [1st Dist.] 2002, no pet.). The circumstances
of this case supported the officer's decisions to place Grissom in handcuffs and to separate him from
the female passenger by placing him in the backseat of the patrol unit.

 Once Griffith said he wanted to restrain Grissom, the encounter formally became "detention"
for purposes of the Fourth Amendment because Grissom had been told he was no longer free to
leave. Yet because the officer's decision to restrain Grissom was supported by reasonable suspicion
that criminal activity was afoot, the Fourth Amendment did not authorize Grissom's efforts to resist. 
See Tex. Penal Code Ann. § 38.03. It follows then that the subsequently obtained evidence was
not excluded by the Fourth Amendment from use in prosecuting Grissom on the underlying charge.







 The appellate record supports the trial court's denial of Grissom's motion to suppress. We
overrule Grissom's sole appellate issue and affirm the trial court's judgment.



 Josh R. Morriss, III

 Chief Justice



Date Submitted: August 18, 2008

Date Decided: August 28, 2008


Publish



whether an offense has been committed, "an officer's subjective intent is
relevant only to a credibility determination of his stated reasons for stopping or arresting
an individual." Id. at *3; Garcia, 827 S.W.2d at 944. We also recognized that, if a trial
court disbelieved that an offense had occurred, then the court could suppress the evidence
obtained as a result of the unlawful stop and that we are required to defer to the trial court's
ruling because it necessarily turns on an evaluation of the credibility of the witnesses.
Kreie, 2003 Tex. App. LEXIS 9076, at *3–4; State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim.
App. 2000).


 
          The critical difference in the instant case and Kreie is that, in this case, the court did
not suppress the evidence because it found the stop was merely a pretext to look for drugs. 
The court suppressed the evidence because it concluded the 3.2-mile delay between the
officers' claimed observation of a traffic offense and the ultimate stop was not within a
reasonable time or a reasonable distance after the alleged violation. It also specifically
found that nothing interfered with the officers' ability to stop the vehicle earlier.  
          At a suppression hearing, the trial court is the sole judge of the credibility of the
witnesses and the weight to be given their testimony, and may choose to believe or
disbelieve any or all of a witness' testimony. Alvarado v. State, 853 S.W.2d 17, 23 (Tex.
Crim. App. 1993); Allridge v. State, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991). In this
case, the trial court entered findings of fact (inferring findings in favor of ruling). The trial
court's ruling will only be reversed on appeal if no reasonable view of the record can
support the trial court's conclusion under the correct law as applied to the facts viewed in
the light most favorable to its legal conclusion. DuBose v. State, 915 S.W.2d 493, 497–98
(Tex. Crim. App. 1996); State v. Rivenburgh, 933 S.W.2d 698, 700 (Tex.
App.—San Antonio 1996, no pet.). To establish an abuse of discretion, the appealing party
must show that the trial court's ruling lies outside the "zone of reasonable disagreement." 
DuBose, 915 S.W.2d at 496–97.  
          Further, the appellate court must sustain the trial court's ruling if it is reasonably
supported by the record and is correct on any theory of law applicable to the case. 
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); James v. State, 72
S.W.3d 35, 40 (Tex. App.—Texarkana 2001, pet. ref'd).
          There is little guidance to be had on the question of how much time or distance can
elapse between an officer's claimed observation of a traffic offense and the eventual stop. 
In a recent case reviewing a traffic stop, the Texas Court of Criminal Appeals looked at the
distance on an interstate highway that an officer followed an alleged traffic violator as a
consideration in deciding whether the officer was exercising a community caretaker
function in stopping the vehicle. Corbin v. State, 85 S.W.3d 272, 278 (Tex. Crim. App.
2002). The officer testified he had seen the car veer slightly over the side line and then
move back into its lane. The court noted the officer had followed the car for over a mile
before stopping the driver. Although the court did not make its decision based solely on
the distance or length of time the officer followed the vehicle, that is clearly a matter to be
considered when a court is deciding whether a traffic stop is reasonable. 
          We do not hold that a delay of this distance will always be unreasonable. In each
such instance, the court should properly consider all of the factors surrounding the stop.


 
In that context, we reiterate that the trial court made a specific finding that nothing would
have prevented an earlier stop, that the stop was 3.2 miles from the point of the alleged
violation, and that the stop was not made either within a reasonable time or a reasonable
distance after the alleged violation. 
          There were no witnesses to give formal testimony in this case, but it is clear counsel
for both sides agreed on the facts involved, the sequence of events, and the reasons for
the actions taken by the arresting officers. It was within the discretion of the trial court to
determine whether to believe the officers' allegations. See Meek v. State, 790 S.W.2d 618,
620 (Tex. Crim. App. 1990). A reasonable review of the record supports the court's
decision in this, as well as in its determination that too much time and space elapsed
before the stop. We find the record can reasonably be viewed as supporting the trial
court's conclusion, when viewed in the light most favorable to that conclusion. See
DuBose, 915 S.W.2d at 497–98; Rivenburgh, 933 S.W.2d at 701.
 

          We affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      October 25, 2004
Date Decided:         November 23, 2004

Publish