**AFFIRMED; Opinion Filed October 30, 2014.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-13-00376-CR

**JOE HENRY MACK, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Collin County, Texas**
**Trial Court Cause No. 002-80956-2013**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Myers
Opinion by Justice Myers

A jury convicted appellant Joe Henry Mack of failure to identify a fugitive with intent to give false information, and the trial court sentenced him to seventy days in jail. In one issue, appellant argues the evidence is insufficient to support the conviction. We affirm.

#### DISCUSSION

In his issue, appellant contends the evidence is insufficient to support the conviction because the State failed to prove beyond a reasonable doubt he gave a false name or date of birth to a peace officer who had lawfully arrested or detained him.

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable

doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. We must defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326; *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008).

The information in this case alleged that on or about November 27, 2012, in Collin County, Texas, appellant "did then and there knowing that the said C. Poligala was a peace officer, intentionally give a false and fictitious name and date of birth, to C. Poligala, a peace officer who had lawfully arrested or detained the defendant, and the defendant was then and there a fugitive from justice[.]" Section 38.02 of the penal code provides in part that a person commits an offense if he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has lawfully arrested or detained the person. TEX. PENAL CODE ANN. § 38.02(b)(1), (2). Section 38.02 also provides that an offense committed under subsection (b) is a class "A" misdemeanor if it is shown that the defendant was a fugitive from justice at the time of the offense. *Id*. § 38.02(d)(2).

There are three distinct types of police-citizen interactions: (1) consensual encounters, (2) investigative detentions, and (3) arrests. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *Chambers v. State*, 397 S.W.3d 777, 781 (Tex. App.—Houston [14th] 2013, pet. ref'd). For Fourth Amendment purposes, a detention occurs "[w]hen a police officer detains someone by restricting his or her movements through either a show of force, the use of physical restraint, or by communicated commands," such that the citizen is no longer free to move independent of police direction. *Grissom v. State*, 262 S.W.3d 549, 552 (Tex. App.—Texarkana 2008, no pet.). "No bright line rule governs when a consensual encounter becomes a seizure." *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011). "Generally, however, when an officer through force or a showing of authority restrains a citizen's liberty, the encounter is no

longer consensual." *Id*. "If ignoring the request or terminating the encounter is an option, then no Fourth Amendment seizure has occurred." *Wade*, 422 S.W.3d at 668.

The evidence in this case shows that on November 27, 2012, a Plano, Texas police officer, Chris Poligala, was traveling southbound on H Avenue when he noticed a red shopping cart in the middle of the road in front of a vacant house. The shopping cart was "full of stuff." Officer Poligala knew the house was vacant from his patrols of the area, and he had seen many transients coming in and out of the house. The house had padlocks on all of the doors, the air conditioning unit had been stripped of all its metal, and the inside had been stripped of all the cabinets and appliances and "things like that."

Officer Poligala originally thought the cart had been abandoned, and he was going to arrange for someone to pick it up and move it. But then he saw appellant come down the driveway from behind the house. Appellant had a kitchen knife and a spool of orange cord in his hand, and Officer Poligala thought the spool of cord could possibly have come from the house. The officer suspected that, at the very least, appellant had been criminally trespassing.

Officer Poligala immediately identified himself as a police officer and began talking to appellant. The officer recalled appellant's demeanor was polite and friendly but slightly evasive. Officer Poligala asked appellant what he was doing at the house, and he said he was looking for his son. The officer knew a male by the name of Justin Thomas was staying at that house, and he asked appellant if Justin Thomas was his son. Appellant replied that he was. The officer asked appellant what his name was, and he said "Mack." The officer asked, "Mack Thomas?" Appellant replied "yes." The officer confirmed this information a couple of times. The officer then asked appellant to spell his name, and he spelled it "Thomac." The officer asked him to spell it once more, and he again spelled it "Thomac." Officer Poligala asked appellant if he knew who owned the house, and he said "yes." He said the owner's name was Lee Ann

–3–

Thompson, but the officer knew the owner was, in fact, Dolly Thomas.

By this point, Officer Poligala thought appellant was being deceitful and asked for his date of birth, which he said was July 31, 1951. The officer asked appellant if he had a Texas driver's license because that would be easiest way to identify someone. Appellant said he had a Texas driver's license under that name and date of birth, but did not have it with him.

Officer Poligala asked for another officer to assist him, and Plano police officer Richard Glenn soon arrived at the scene. Officer Glenn recognized appellant and said his name was Mack, but Mack was appellant's last name, not his first name. The officers then searched the computer database and identified appellant as Joe Henry Mack, whose date of birth was July 31, 1959. Officer Poligala recalled that as the encounter progressed, appellant became upset. At one point he started pulling things out of the shopping cart and throwing them on the ground, saying he had never stolen anything in his life. As he was throwing things down on the ground, appellant also said he was fifty-three years old, at which point Officer Poligala knew he could not have been born in 1951. When the officer confronted appellant with this information and asked for his real name and date of birth, appellant told the officer "that I would have to take him to jail instead of him giving me his actual name." Officer Poligala ran appellant's name through the NCIC database and found there was an active warrant for appellant's arrest. When the officer asked appellant about the warrant, appellant admitted knowing about it. Appellant was placed under arrest.

The video from the camera in Officer Poligala's police cruiser, which was admitted into evidence, shows that after appellant told the officer his name was "Mack," the officer asked appellant for his date of birth. Appellant told the officer he was born on July 31, 1951, after which Officer Poligala asked appellant to spell his last name. Appellant spelled his last name as "Thomac," and confirmed that spelling to the officer. Appellant asked the officer if he had done

anything wrong, and the officer explained he would have to verify appellant's identity because he did not know him and had never seen him in the neighborhood. Officer Poligala and appellant spoke for several more minutes, after which the officer asked appellant if he had an identification card or driver's license from the State of Texas. Appellant responded that he had identification but lost it, and the officer asked appellant if he was sure about the spelling of his last name "because it doesn't seem to make . . . sense." Appellant again gave the officer his last name but changed the spelling to "Thomas," and then said he did not remember spelling his name with a "c." When the second officer recognized appellant and confirmed "Mack" was appellant's last name, not his first name, appellant attempted to push the cart away. The officer put his hand on the cart and told appellant: "Hang tight. Hang tight just for a second, okay? Because I want to make sure none of this stuff here is stolen." After Officer Poligala searched the computer database using appellant's correct name and date of birth and confirmed there was a warrant for appellant's arrest, appellant was placed under arrest.

Appellant maintains that the evidence in this case shows nothing more than a consensual encounter. Appellant contends he was not being detained by Officer Poligala when the officer asked him for his name, and that a reasonable person in appellant's position would have felt free to decline the officer's request or otherwise terminate the encounter. Furthermore, appellant contends there is nothing about the conversation between appellant and Officer Poligala that would lead a reasonable person to believe appellant was being detained. Appellant further argues that, during the encounter, there were no additional circumstances such as the officer's use of language or tone of voice, the display of a weapon, or some physical touching of appellant, that would indicate compliance with officer's request was mandatory. *See, e.g., State v. Priddy*, 321 S.W.3d 82, 87 (Tex. App.—Fort Worth 2010, pet. ref'd) (listing various factors that indicate a police-citizen interaction is a seizure, rather than a consensual encounter).

Among the authorities cited by appellant is *Quick v. State*, 999 S.W.2d 79 (Tex. App.—Houston [14th Dist.] 1999, no pet.). *Quick* involved a situation where a deputy sheriff serving a warrant for the defendant's arrest knocked on the defendant's front door and identified himself. *Id.* at 80. The defendant opened the door (and stood behind burglar bars across the doorway), but gave a false name. *Id.* When the deputy showed the defendant the felony arrest warrant, the defendant again gave the false name. *Id.* The deputy told the defendant he had a felony warrant and that the defendant needed to open the burglar bars, at which point the defendant said, "It's me, it's me," then shut the door. *Id.* Subsequently, the garage door of the residence opened and the defendant, who was standing there, identified himself. *Id.* The court of appeals held the evidence was insufficient to support a failure to identify conviction because the appellant had not yielded to the deputy's show of authority or been physically forced to yield at the time he gave the deputy a false name, and thus, was not detained as required by the statute. *Id.* at 80–81.

The situation in the present case is different. The jury could have concluded appellant yielded to Officer Poligala's initial show of authority when he asked appellant for identifying information, and that the detention continued as appellant provided false identifying information and waited for the officer to check it. Furthermore, even if appellant was not detained when the officer initially asked appellant for his identifying information, the jury could have concluded he was detained when, as shown by the evidence, the officer explained to appellant that he would have to verify appellant's identity, and asked for appellant's name again, or when the officer put his hand on the shopping cart, told appellant to "hang tight," and stopped appellant from leaving the area before he confirmed appellant's identity. The fact that one could infer appellant had not submitted to the officer's authority does not show the evidence in this case was insufficient. As the reviewing court, we must presume the trier of fact resolved the conflicting inferences in favor of the prosecution, and defer to that determination. *See Clayton v. State*, 235 S.W.3d 772, 778

–6–

(Tex. Crim. App. 2007).  Officer Poligala's testimony and the video footage from the camera in his police cruiser provided sufficient evidence from which the jury could have concluded appellant made the false identification while he was lawfully detained.  *See* TEX. PENAL CODE ANN. § 38.02(b); *see Jackson*, 443 U.S. at 319.  We conclude the evidence is sufficient to support the verdict.  We therefore overrule appellant's issue.

The trial court's judgment is affirmed.

/ Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
130376F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOE HENRY MACK, Appellant

No. 05-13-00376-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 2, Collin County, Texas
Trial Court Cause No. 002-80956-2013.
Opinion delivered by Justice Myers.
Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of October, 2014.